# EXHIBIT C-2

Filed: 5/11/2026 9:12 AM
Lea Carlson,
District Clerk
Rockwall County, Texas

Chau Dodd

CAUSE NO. 1-26-0870 _____

| | | |
|---|---|---|
| LAKE POINTE BAPTIST CHURCH, | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | ____ JUDICIAL DISTRICT |
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | § § § | Rockwall County - 503rd District Court |
| Defendant. | § § | ROCKWALL COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

LAKE POINTE BAPTIST CHURCH, Plaintiff herein, files this its Original Petition against Defendant, BROTHERHOOD MUTUAL INSURANCE COMPANY, and, in support of its causes of action, would respectfully show the Court the following:

### I.    PARTIES

1.      Plaintiff, LAKE POINTE BAPTIST CHURCH, owns the properties made the basis of this suit located at: 701, 699, & 695 E. Interstate 30, Rockwall, TX 75087 in Rockwall County, Texas (the "**Rockwall Campus**") and 9150 Garland Road, Dallas, TX 75218  in Dallas County, Texas (the "**East Dallas Campus**"), collectively herein as the "**Properties**".

2.      Defendant, BROTHERHOOD MUTUAL INSURANCE COMPANY ("Defendant") is a domestic entity authorized to engage in the insurance business in the State of Texas and may be served by serving its Registered Agent for Service of Process, Cogency Global Inc, 1601 Elm St Ste 4360, Dallas, TX 75201. Service is requested by private process server at this time.

### II.    DISCOVERY

3.      Plaintiff intends to conduct discovery under a Level 3 control plan pursuant to the Texas Rules of Civil Procedure.

### III.    CLAIM FOR RELIEF

4.      At this time, Plaintiff cannot assess accurately a definite limit to the damages it has sustained, or will sustain in the future, as a result of Defendant's acts. Given the early state of this litigation, projections have not been declared regarding the full extent and severity of the injuries and damages. In view of these circumstances, Plaintiff does not wish to impose any limit on what it may present to the jury or what the jury may consider as a range of damages in this case; however, Plaintiff makes the following representation in compliance with Tex. R. Civ. P. 47(c) to aid in the efficient court administration. Plaintiff believes that the most reasonable option afforded under Tex. R. Civ. P. 47, at this time, prior to the completion of discovery in the case, is to seek monetary relief over $1,000,000, exclusive of interest and costs, which is the only option that does not require Plaintiff to select a speculative, arbitrary cap on its damages. Plaintiff reserves the right to modify or adjust this statement, as the litigation progresses, and additional evidence is compiled. Regardless of what Plaintiff must state for administrative purposes as the amount of damages it seeks pursuant to Tex. R. Civ. P. 47(c), it desires to leave the final determination of damages, if any, to the sole province of the jury, based upon the credible evidence presented to the jury at trial.

### IV.    JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction of this cause of action, because it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court.

6.      Venue is proper in Rockwall County under Tex. Civ. Prac. & Rem. Code §15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claim occurred in said County. In particular, the majority of the loss at issue occurred in this County.

### V.    FACTUAL BACKGROUND

7.      Plaintiff entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting Plaintiff's Properties.

**Plaintiff's Original Petition**                                                                          **Page 2**

8.      The agreement was drafted by Defendant and assigned Policy Number 42MLA0505155 (the "**Policy**"). The Policy's effective date was from January 1, 2023, through January 1, 2024, and was renewed from January 1, 2024, through January 1, 2025 (referred to as the "**Policy Period**").

9.      Coverage under the Policy covers physical damage to the buildings on the Properties as a result of a covered loss.

10.     During the policy period a severe hail and windstorm swept through Dallas and Rockwall, Texas, and struck the Properties.

11.     The hail that fell from the hail and windstorm measured at least 2 inches in diameter and was recorded by a trained spotter for the National Oceanic and Atmospheric Administration ("NOAA").

12.     One of the 2-inch hail stones from the hail and windstorm was recorded falling less than two and half miles away from the Rockwall Campus.

13.     Even more damaging and large hail fell throughout the Dallas metroplex during the same hail and windstorm with hailstone ranging from 1.25 inches to 3.5 inches being recorded.

14.     Immediately after said storm, the Properties exhibited new damages caused by hail and wind including, but not limited to, visible fractures to exterior roof materials, large dents to metal appurtenances throughout all buildings, and new interior water damages at the Rockwall Campus and the East Dallas Campus.

15.     Plaintiff subsequently filed a claim under the Policy.

16.     Defendant assigned the claim, claim number 0653994 (referred to as the "**Claim**").

**A.      Investigations, Reports, and Denial**

17.     On or about August 23, 2023, Defendant visited the Properties.

18.     Defendant performed a cursory inspection of the Properties and noted extensive new damages to the Properties including new hail damages to metal flashing and HVAC units from

**Plaintiff's Original Petition**                                                                                      **Page 3**

the hail caused dents, along with large fractures throughout the spray foam ("SPF") roofing systems of all buildings at the Properties.

19.     The covered hail damages to these items were so obvious that Defendant could not deny the damage was covered under the Policy.

20.     However, despite acknowledging some of the hail damage to the Properties, Defendant failed to record the obvious covered damage to the other roof systems at the Properties and improperly investigated the claim with a pretext to limit its liability on the claim.

21.     For example, without explanation, Defendant immediately retained Haag Engineering ("Haag") services, despite admitting to already finding covered hail damages at the Properties.

22.     Based on information and belief, Defendant retained Haag not to conduct a fair and unbiased investigation of the damages at the Properties, but instead hired Haag based on its known bias to favor insurance carriers, like Defendant, and disfavor property owners by writing reports that tend to blame damages are excluded losses such as "wear and tear" and minimize covered damages.

23.     On or around December 29, 2023 Defendant's hired third party engineer from Haag produced a "CoreLogic Weather Report" which estimated the hailstones on the date of loss to be anywhere between 0.8 – 1.5 inches in diameter.

24.     In said report, Defendant's hired engineer included a disclaimer that "*Many of these products have not undergone peer review ... Several factors can influence the accuracy of the estimated hail sizes and wind gusts. Thus, as in this case, we often see weather verification products from different companies that have different hail size or wind speed estimates at the same site for a given storm, even though they use similar weather data.*"

25.     This same day, Defendant's hired engineer issued a separate "Hail Damage Evaluation" (the "**Haag PE Report**") which contained several misrepresentations and inaccuracies regarding the loss and Properties.

26. For example, the Haag PE Report only included the minimum-size from its own CoreLogic Weather Report and falsely claimed that CoreLogic had determined this was the largest-sized hail "*up to 0.5 miles*" of the Properties on the date of loss.



| Date | Source | Distance | | |
|---|---|---|---|---|
| | | up to 0.5 mile | 0.6 to 1 mile | 1-3 miles |
| 3/22/2021 | CoreLogic | - | - | 0.9 |
| 4/9/2021 | CoreLogic | - | - | 1 |
| 12/10/2021 | CoreLogic | - | - | 0.9 |
| 3/14/2022 | NWS | - | 1 | - |
| | CoreLogic | 1 | 1 | 1 |
| 4/13/2022 | CoreLogic | - | 1.1 | 1.1 |
| 12/13/2022 | CoreLogic | - | - | 1.2 |
| 4/2/2023 | CoreLogic | 0.8 | 0.8 | 0.9 |
| 4/20/2023 | NWS | - | 1.5 | 1.5 |
| | CoreLogic | 1.1 | 1.3 | 1.3 |
| 6/11/2023 | NWS | - | - | 2 |
| | CoreLogic | 0.8 | 0.9 | 2 |
| 6/13/2023 | NWS | - | - | 1 |
| | CoreLogic | - | - | 0.9 |
| 9/24/2023 | CoreLogic | - | - | 0.75 |

Table 1: Weather data since January 1, 2021

(Left to Right)  *Haag PE Report's Table 1 & Photo #48, showing 1-inch+ measured hail fracture to Properties' roof.*

27. Furthermore, the Haag PE Report used this same misrepresentation to artificially reduce the size of hail that struck the Properties, in an effort to apply the hypothetical smallest possible hail in its assessment for Defendant.

28. The Haag PE Report then used this artificially reduced number to calculate "possible" damages to different materials present in the construction of Plaintiff's Properties, without any reference to any other hail sizes despite confirmation of larger hail via Defendant's own prior inspection and without reviewing other weather date.

29. Through this intentional use of inaccurate weather data and its sole inclusion in the Defendant's hired engineer's dubious calculations, the Haag PE Report falsely stated "*Recent hail lacked the energy to dent roofing panels or other hard metals, damage the builtup roofing, damage the modified bitumen roofing, or damage the thermoplastic polyolefin*" and falsely concluded that the outstanding covered hail damages to Plaintiff's Properties were effectively non-existent.

30. On May 24, 2024 — nine months after Defendant's initial inspection of the Properties — Defendant produced its estimate for repairs to the Properties including repairs of some SPF roofing and repairs to soft metal appurtenances and repairs to some HVAC units damaged by the covered hail and windstorm.



| | Standing Seam Roof | | | | | | |
| | 10508.23 Surface Area | | | | 105.08 Number of Squares | | |
| | 299.94 Total Perimeter Length | | | | 120.00 Total Ridge Length | | |
| DESCRIPTION | | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
| *There was no functional damage observed to the standing seam roofing.* | | | | | | | |
| Totals: Standing Seam Roof | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| LAKEPOINT_SUPPLEMENT | | | | | 5/24/2024 | | Page: 15 |

*Excerpt: pg 15 of Defendant's estimate, stating no "functional" damages to metal roofing at Properties.*

31.     Despite providing coverage for the Claim damages described in Paragraph 24, Defendant's estimate for repairs inexplicably denied the existence of any hail damages to the rest of the Properties' non-SPF roofing systems despite failing to properly address the hail caused indentions to the metal roofs at the Property, including those indentions that can be seen without aid from the ground and inside the buildings at the Property.

32.     Based on all available information it is Plaintiff's reasonable belief that Defendant improperly assessed it found no "functional" damages beyond the SPF roofs at the Properties based upon the Haag PE Report's intentional manipulation of unreliable data and biased speculation on behalf of Defendant.

33.     Defendant has improperly third-party experts to manufacture a favorable outcome and has continued to rely on said experts despite contrary evidence, including publicly-available meteorological data and Defendant's own inspection of the Properties.

| Time | Type | Magnitude | City | County | State |
|---|---|---|---|---|---|
| 2023/06/11 06:44 PM | HAIL | 2 | 1 NNE Rockwall | Rockwall | TX |
| 2023/06/11 06:43 PM | HAIL | 2.75 | Royse City | Rockwall | TX |
| 2023/06/11 06:40 PM | HAIL | 1.5 | Fate | Rockwall | TX |
| 2023/06/11 06:35 PM | HAIL | 2.25 | 2 NNE Fate | Rockwall | TX |
| 2023/06/11 06:35 PM | HAIL | 2.25 | 1 N Fate | Rockwall | TX |
| 2023/06/11 06:33 PM | HAIL | 1 | 2 SE Rockwall | Rockwall | TX |
| 2023/06/11 06:30 PM | HAIL | 2 | 1 S Royse City | Rockwall | TX |
| 2023/06/11 06:24 PM | HAIL | 1.75 | 1 N Rockwall | Rockwall | TX |

IEM LSR App: RADAR: 2023/06/11 06:30 PM

8 entries (filtered from 328 total entries)

*Public meteorological data confirming hail sized 1 to 2.75 inches in diameter fell around 6:30PM on date of loss.*

**Plaintiff's Original Petition**                                                    **Page 6**

34.    On or around July 9, 2024, Defendant provided Plaintiffs with photographs from its inspection of the Properties which confirmed that large hail had struck and damaged the Properties more extensively than had been described in the Haag PE Report.



7/9/2024 10:53:23 RM (GMT-05:00) Brotherhood Mutual
Lake Point Baptist Church
Rockwall, TX
Haag File No: 01230818TX-1618/258

61 Main Building . Fractured SPF coating typical of hail.

*Defendant's inspection photo #61, showing numerous large hail fractures to a section of the Properties' roofs.*

35.    Furthermore, Defendant's recommendations for repairs to the Properties' SPF roofs were entirely inadequate and failed to properly address the severe hail damage to the SPF roofs at the Rockwall Campus even based on the industry articles Defendant itself relied upon.

36.    For example, Defendant's proposed scarification and cleaning processes were in direct contradiction with industry standards and would compromise the SPF roofs' ability to function.[1]

37.    On or around December 20, 2024 Plaintiff provided Defendant with an estimate from a reputable area contractor to properly replace the hail damaged SPF roofing at the Rockwall Campus.

38.    The December 20, 2024 correspondence from the Plaintiff provided numerous additional details for Defendant to understand how its Claim payment of $2,479,943.00 was inadequate to

---

[1] *Defendant relied upon Spray Polyurethane Foam Systems for New and Remedial Roofing, SPRAY POLYURETHANE FOAM ALLIANCE.pdf.*

complete the SPF roof repairs to the Properties and that the showed Defendant's method of repair to the SPF dome roof was unreasonable and would not return the Property back to its pre-loss condition.

39.    Specifically, Plaintiff provided industry articles and pointed to issues with Defendant's proposed methods of repair such as, but not limited to: (1) calling for pressure/chemical spray cleaning post-scarification, which is contrary to industry standards due to the destructive damage moisture has to SPF adhesion which manufacturer and industry sources confirm; (2) failing to account for the unevenness of the dome roof, which would (despite not being proper) require additional scarification passes and additional SPF applications in those areas; (3) not accounting for the elevated wind exposure on the auditorium roof which is up to six stories high. And requires additional labor and equipment to contain the damaged SPF being removed and keep from damaging neighboring properties; and (4) that the carrier's estimate does not adequately account for the labor-intensive process of collecting and disposing of damaged SPF foam, dust, and debris generated during scarification.

40.    Further, Defendant failed to explain how its method of scarification of only ¾ of an inch deep on the SPF roof would remove all of the damaged roof areas where there are hundreds of hail hits deeper than ¾ of an inch deep.

41.    Defendant further failed to account for the proper method to repair the modified bitumen roof along the parapet walls at the Properties, which must be fully removed and replaced in order to properly return the Properties to their pre-loss condition.

42.    Instead, Defendant merely continued to rely on its faulty and contradictory repair method that would leave large section of hail damage damaged modified-bitumen on the roofs at the Properties, leaving the roof vulnerable to additional damage and interior leaks from the storm created openings.

43.    On or about January 21, 2025 — one month later — Defendant provided Plaintiff with a Reservation of Rights letter in which Defendant simply regurgitated a superficial summary of its

Claim decision based solely on the flawed Haag PE Report, and failed to address any of Plaintiff's valid and urgent concerns regarding the repairs to the Properties or Defendant's inadequate investigation.

44.    On or about February 18, 2025, Defendant sent a follow-up email to Plaintiff which provided no information regarding its Claim investigation and demanded additional files from Plaintiff including an estimate for the covered HVAC damages at the Properties in an attempt to place Defendant's duty to investigate the Claim onto Plaintiff.

45.    On or about March 27, 2025, Defendant was provided with Plaintiff's 473-page documentation of the Claim which requires significant effort and resources to complete by Plaintiff.

Good afternoon,

I have received the Proof of Loss statement on 03/27/25. We are in the process of reviewing this loss statement and will respond to you once we have completed the review.

Thank you,

*N. Gerdes*

Nikki Gerdes
Sr. Claims Adjuster
Claims Adjuster | Property Claims
1-800-333-3371 Ext. 5392
Fax: 800-284-9579
claims@brotherhoodmutual.com
PO Box 2228 | Fort Wayne, IN 46801

**BROTHERHOOD MUTUAL.**
*BrotherhoodMutual.com*
*Advancing the Kingdom by Serving the Church*
*www.BrotherhoodMutual.com*
*"Advancing the Kingdom by serving the Church"*

*Defendant's 3/28/2025 e-mail to Plaintiff, acknowledging receipt of all of Plaintiff's Claim files.*

46.    Several weeks later, on or about April 17, 2025 Defendant contacted Plaintiff stating it was "*unable to accept nor reject your Proof of Loss currently*" and requested additional patience from Plaintiff while Defendant continued to investigate the Claim.

47.     One week later on April 25, 2025, Defendant hired an additional third-party building consultant to coordinate a re-inspection of the Properties despite issues about its proposed repair methods being raised over four months earlier.

48.     On or around June 9, 2025, Plaintiff contacted Defendant and its hired building consultant regarding the significant delays in the scheduling of its reinspection and the obvious flaws in Defendant's scope of repairs for the SPF roofs at the Properties.

49.     The following day on June 10, 2025, Defendant stated "*The building consultant will be reviewing the engineer's findings* [Haag PE Report]" despite having nearly two months to review the Claim files since Defendant assigned its building consultant.

50.     On or around July 31, 2025, the Defendant falsely stated it still required a proof of loss document from Plaintiff despite having previously received and acknowledged Plaintiff's proof of loss submitted on March 27, 2025. Plaintiff provided its proof of loss to Defendant again on July 31, 2025.

51.     On or around September 4, 2025 following nearly three months of inaction on the Claim by Defendant since its reinspection of the Properties, Plaintiff notified Defendant of its intention to conduct necessary emergency repairs to the SPF roof at the Properties to prevent any additional losses resulting from its still-unresolved Claim damages and requested Defendant reach out by September 26, 2025 with any questions or concerns.

52.     Three months later on December 4, 2025, Plaintiff received an e-mail from an attorney that Defendant had hired for representation regarding the Claim that falsely stated "*While Lake Pointe has submitted proofs of loss … Lake Pointe has not submitted estimates supporting the amounts claimed in the proofs of loss.*", despite Defendant previously acknowledging receipt of Plaintiff's estimate on both December 20, 2024, and March 27, 2025.

53.     To date, Defendant has not paid Plaintiff the value of its Claim under its Policy with Defendant.

54. As a result, Plaintiff has incurred additional damages and the increased costs of repair that were, and still are to this day, a natural, probable, and foreseeable consequence of Defendant's failure to pay the amount owed on the Claim. For example, the costs of repair have increased substantially since Defendant's denial of the Claim.

55. Defendant and its third party experts assigned to the Claim failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Properties and undervalued the damage observed during the inspection.

56. Moreover, Defendant and its adjuster performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses for the covered Properties.

**B. Policy Compliance**

57. Plaintiff fully complied with all requirements under the Policy to properly notify the Defendant of the loss to its covered property.

## VI. CAUSES OF ACTION

**A. Breach of Contract**

58. Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 57 of this Petition.

59. Defendant entered into the Policy with Plaintiff.

60. Plaintiff's Properties sustained damage during the Policy Period as a result of hail and wind, both covered causes of loss.

61. Defendant has breached the terms of the Policy by wrongfully underpaying covered damages instead of paying the full benefits owed to Plaintiff under the Policy for a covered loss to the Properties.

62. As a result of Defendant's breach of the Policy, Plaintiff has sustained: (1) actual damages, (2) consequential damages (related to increased costs of construction and other related consequential damages), and (3) incurred reasonable and necessary attorney's fees to date.

## B.    Insurance Code Violations

63.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 62 of this Petition.

### *Prompt Payment of Claims Statute*

64.    As set forth above, Plaintiff was insured under the Policy during the Policy Period.

65.    During the Policy Period, a wind and hailstorm swept through Rockwall County, Texas and Dallas County, Texas and damaged Plaintiff's Properties.

66.    As a result, Plaintiff gave proper notice of a claim under the Policy to Defendant.

67.    Defendant is under an obligation to promptly pay Plaintiff's Claim.

68.    Defendant issued its decision on the Claim on or about May 30, 2024 and therefore had all reasonably requested information necessary to make a decision on the Claim since at least May 30, 2024.

69.    Defendant has delayed payment of Plaintiff's claim for a time exceeding the period specified by statute by underpaying damages covered under the Policy and wrongfully denying damages clearly covered from the Policy.

70.    Defendant has paid only a small amount on the Claim for roof repairs despite Plaintiff's roof being substantially damaged by the covered hail and windstorm and requiring full replacement.

71.    Defendant failed to pay the full claim amount and delayed the payment on covered damage to the Properties.

72.    To date, Defendant has not tendered payment for all of Plaintiff's damages arising out of its insurance Claim with Defendant.

73.    The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

**Plaintiff's Original Petition**                                                                                  **Page 12**

74.    As a result of the insurance code violations listed above, Plaintiff, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorney's fees as set forth in Article 542.060 of the Texas Insurance Code.

*541 Insurance Code Violations*

75.    Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

76.    Defendant violated § 541.051 of the Texas Insurance Code by misrepresenting the terms and benefits of coverage when Defendant represented in its May 24, 2024, estimate that numerous materials at the Properties was not damaged by the wind and hailstorm and that only a portion of the rood needed to be repaired despite widespread damage.

*Violation of § 541.060(a)(1):*

77.    Defendant violated § 541.060(a)(1) by misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue by undervaluing the damage to the Properties.

78.    Specifically, Defendant has misrepresented the following:

a.    That the non-SPF roofing systems at the Properties were not damaged enough to meet the deductible;

b.    That repairing the SPF roof would only require a simple application; and

c.    That the significant delays in resolving Plaintiff's Claim were the fault of Plaintiff not providing documentation that Defendant had previously received and acknowledged on numerous occasions.

d.    That Plaintiff had failed to submit its proof of loss when it had submitted the proof of loss to Defendant;

e.    That Plaintiff failed to submit estimates in support of its claim for damages despite previously submitting such material twice;

f.    That Defendant did not owe for damages to the metal roofs at the Properties due to allegedly lacking "functional" damage despite this not being the only requirement for coverage;

g.    Issuing a repair estimate for the SPF roof system that would not remove all of the damaged SPF and representing that the estimate covered all covered damages to the SPF;

h. Writing an estimate to repair the SPF roof at the Property and representing that the estimate aligned with industry standards despite contradicting the cited to industry standards and failing to address the additional hail damages to the SPF roof not addressed in the cited to article.

79. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused Plaintiff damages.

*Violation of § 541.060(a)(2):*

80. Defendant violated § 541.060(a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim as insurer's liability had become reasonably clear that the covered damage caused substantial damage to Plaintiff's Properties.

81. Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement by:

a. Making the misrepresentations listed at paragraph 78;

b. Hiring biased third-parties in an attempt to lower Defendant's liability on the Claim;

c. Relying on improper weather data and ignoring its own evidence of damages at the Property to adopt its hired and biased engineer's conclusions;

d. Failing to properly document the supporting evidence of covered hail and wind damages to the Properties provided by Plaintiff to Defendant;

e. Misusing industry materials in an effort to support its position of repair despite such materials not addressing all of the covered damages and Defendant itself ignoring such additional covered damages when determining the costs to return the Property to its pre-loss condition;

f. Failing to properly investigate the roof damage;

g. Failing to record the obvious evidence of covered damage across the entire roof;

h. Misrepresenting to Plaintiff that the hail damages to the Properties were either not from hail or were insignificant;

i. Failing to write an estimate that included obvious covered damage from hail and wind to the roof and leaving out essential material required to properly repair and replace Plaintiff's Properties; and

j. Hiring an engineer in an effort to solely deny and underpay Plaintiff's Claim, despite clear evidence of covered damage to the contrary.

**Plaintiff's Original Petition**                                                           **Page 14**

82.     Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused Plaintiff damages.

*Violation of § 541.060(a)(3):*

83.     Defendant violated § 541.060(a)(3) by failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of the Claim or offer of a compromise settlement of a claim.

84.     Defendant has failed to promptly provide Plaintiff a reasonable explanation of the basis for Defendant's denial of the Claim. Defendant's estimate dated May 24, 2024, was based solely on its adjuster's outcome-oriented investigation. Defendant failed to explain how the majority of the hail and wind damage across the roof was not covered and included in calculating the amount of loss when determining coverage.

85.     Defendant also failed to explain how the roof damage was not covered despite admitting to the storm causing roof damage. Defendant merely based its decision on its adjuster's unreasonable and baseless estimate.

86.     Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused Plaintiff's damages.

*Violation of § 541.060(a)(7):*

87.     Defendant violated § 541.060(a)(7) by refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim.

88.     Specifically, Defendant has refused to pay Plaintiff's Claim without conducting a reasonable investigation by:

    a.  Making the misrepresentations listed at paragraph 78;

    b.  Hiring biased third-parties in an attempt to lower Defendant's liability on the Claim;

    c.  Relying on improper weather data and ignoring its own evidence of damages at the Property to adopt its hired and biased engineer's conclusions;

    d.  Failing to properly document the supporting evidence of covered hail and wind

**Plaintiff's Original Petition**<span style="float:right">**Page 15**</span>

damages to the Properties provided by Plaintiff to Defendant;

e. Misusing industry materials in an effort to support its position of repair despite such materials not addressing all of the covered damages and Defendant itself ignoring such additional covered damages when determining the costs to return the Property to its pre-loss condition;

f. Failing to properly investigate the roof damage;

g. Failing to record the obvious evidence of covered damage across the entire roof;

h. Misrepresenting to Plaintiff that the hail damages to the Properties were either not from hail or were insignificant;

i. Failing to write an estimate that included obvious covered damage from hail and wind to the roof and leaving out essential material required to properly repair and replace Plaintiff's Properties; and

j. Hiring an engineer in an effort to solely deny and underpay Plaintiff's Claim, despite clear evidence of covered damage to the contrary.

89.    Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused Plaintiff damages.

90.    Defendant has violated § 541.061 by making an untrue statement of material fact when it stated that Defendant had not received Plaintiff's proof of loss or estimate of damages to support the Claim.

## C.    DTPA Violations

91.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 90 of this Petition.

92.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

93.    Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

94.    Defendant has violated the Texas Deceptive Trade Practices Act by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing; and engaging in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(4) in

**Plaintiff's Original Petition**                                                    **Page 16**

that Defendant took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

95.    Defendant also violated the DTPA by making the misrepresentations listed at paragraph 78 in violation of the Texas Insurance Code.

96.    Upon information and belief, Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages and reasonable attorney's fees pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b).

### D.    Breach of The Duty of Good Faith and Fair Dealing

97.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 96 of this Petition.

98.    Plaintiff and Defendant entered into a valid and enforceable insurance policy.

99.    Defendant owed Plaintiff the common law duty of good faith and fair dealing.

100.    Defendant breached the common law duty of good faith and fair dealing by wrongfully underpaying the Claim and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear.

101.    Specifically, Defendant has breached the common law duty of good faith and fair dealing owed to Plaintiff by:

   a.  Making the misrepresentations listed at paragraph 78;

   b.  Hiring biased third-parties in an attempt to lower Defendant's liability on the Claim;

   c.  Relying on improper weather data and ignoring its own evidence of damages at the Property to adopt its hired and biased engineer's conclusions;

   d.  Failing to properly document the supporting evidence of covered hail and wind damages to the Properties provided by Plaintiff to Defendant;

   e.  Misusing industry materials in an effort to support its position of repair despite such materials not addressing all of the covered damages and Defendant itself ignoring such additional covered damages when determining the costs to return the Property to its pre-loss condition;

**Plaintiff's Original Petition**                                                                                           **Page 17**

    f.   Failing to properly investigate the roof damage;

    g.  Failing to record the obvious evidence of covered damage across the entire roof;

    h.  Misrepresenting to Plaintiff that the hail damages to the Properties were either not from hail or were insignificant;

    i.   Failing to write an estimate that included obvious covered damage from hail and wind to the roof and leaving out essential material required to properly repair and replace Plaintiff's Properties; and

    j.   Hiring an engineer in an effort to solely deny and underpay Plaintiff's Claim, despite clear evidence of covered damage to the contrary.

102.   Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally or with gross negligence.

103.   Defendant was aware at all times that its actions would result in the denial or underpayment of Plaintiff's Claim, and cause extraordinary harm associated with Plaintiff's Claim.

104.   As a result of Defendant's acts and omissions, Plaintiff sustained actual damages.

## VII.   ATTORNEY'S FEES

105.   Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 104 of this Petition.

106.   Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

107.   Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001–38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

108.   Plaintiff further prays that it be awarded all reasonable attorney's fees incurred in prosecuting its causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

109.    Plaintiff further prays it be awarded all reasonable and necessary attorney's fees incurred in prosecuting Plaintiff's DTPA causes of action above pursuant to § 17.50(d).

## VIII.    CONDITIONS PRECEDENT

110.    All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## IX.    DEMAND FOR JURY

111.    Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff herein requests a jury trial and along with the filing of the Original Petition has tendered to the Clerk of the Court the statutory jury fee.

## X.    DISCOVERY REQUESTS

112.    Pursuant to Rule 194, you are required to disclose, within thirty (30) days after filing an Answer herein, the information or material described in Rule 194.2(b)1–12.

## XI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recover actual damages, consequential damages, statutory interest, and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/ Andrew D. Spadoni*
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com
Andrew D. Spadoni
State Bar No. 24109198
aspadoni@dcclawfirm.com

**Plaintiff's Original Petition**                                    **Page 19**

DUGAS & CIRCELLI, PLLC
4800 Bryant Irvin Court
Fort Worth, Texas 76107
Telephone:    (817) 945-3061
Facsimile:    (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Madison York on behalf of Andrew Spadoni
Bar No. 24109198
myork@dcclawfirm.com
Envelope ID: 114703666
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 5/11/2026 2:20 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Spadoni | | aspadoni@dclaw.com | 5/11/2026 9:12:31 AM | NOT SENT |
| Jennifer Saenz | | jsaenz@dclaw.com | 5/11/2026 9:12:31 AM | NOT SENT |